**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BERNARD CAMPBELL, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-6584 (JBS) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| GIBB, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> BERNARD CAMPBELL, Plaintiff pro se
> Reg. No. # 55199-066
> FCI Fort Dix - 5703
> P.O. Box 2000
> Fort Dix, New Jersey 08640

**SIMANDLE,** District Judge

Plaintiff, Bernard Campbell, a federal inmate confined at the FCI Fort Dix in Fort Dix, New Jersey, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether the Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or

because it seeks monetary relief from a defendant who is immune
from such relief.  For the reasons set forth below, the Court
concludes that the Complaint should be dismissed without
prejudice.

I.  BACKGROUND

Plaintiff, Bernard Campbell ("Campbell"), brings this civil
action, pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986,
alleging violations of his First, Seventh, Eighth and Fourteenth
Amendment rights by the following defendants: Gibb, an EMT
employed at FCI Fort Dix; Dr. Nicoletta, a doctor employed at the
FCI Fort Dix Medical Department; Lopez, the Clinical Director of
the Medical Department at FCI Fort Dix; Baker, Acting
Administrator of the Medical Department at FCI Fort Dix; and
Warden Zickefoose.  (Complaint, Caption and ¶¶ 4 through 8).  The
following factual allegations are taken from the Complaint, and
are accepted for purposes of this screening only.  The Court has
made no findings as to the veracity of plaintiff's allegations.

Campbell alleges that, on October 2, 2010, defendant Gibb
responded to a medical emergency involving plaintiff.  Upon
Gibb's arrival at the scene, he found plaintiff lying on the
ground.  Plaintiff asked for a wheelchair, whereupon Gibb
allegedly "violently jerked plaintiff up off the ground and threw
him onto the medical cart."  (Compl., ¶ 11).  Campbell further
alleges that Gibb pulled plaintiff from the medical cart "without
professional care or justification, forcefully threw plaintiff

2

onto an office chair with rollers on it, that hurted [sic] plaintiff worse than the pain in his back that was throbbing." (Compl., ¶ 12). Campbell claims that Gibb's actions were "racially motivated, with excessive force, and without professionalism." (Id.). Campbell also alleges that he lost consciousness for a few minutes and that the racial abuse continued for several hours. (Compl., ¶ 14).

Campbell further claims that all of the defendants acted in concert and conspired with each other to retaliate against plaintiff and falsify reports to cover-up the "racial and excessive abusive acts of defendant Gibb." (Compl., ¶ 15). Campbell alleges generally that he was denied medical treatment for his injuries. (Compl., ¶ 16). Campbell further asserts that defendants failed to adequately train, supervise and discipline the defendants. (Compl., ¶ 17).

Campbell seeks compensatory, punitive and consequential damages against all of the defendants in excess of $300,000.00. (Compl., ¶ 21).

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss

3

any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). <u>See also Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. <u>Id</u>. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[1] Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

_____

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting
Twombly, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must
now allege "sufficient factual matter" to show that a claim is
facially plausible.  This then "allows the court to draw the
reasonable inference that the defendant is liable for the

misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in

Iqbal emphasizes that a plaintiff must demonstrate that the

allegations of his complaint are plausible.  Id. at 1949-50; see

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside,

578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides

the "final nail-in-the-coffin for the 'no set of facts' standard"

set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that

applied to federal complaints before Twombly.  Fowler, 578 F.3d

at 210.  The Third Circuit now requires that a district court

must conduct the two-part analysis set forth in Iqbal when

presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a

---

[2]  In Conley, as stated above, a district court was
permitted to summarily dismiss a complaint for failure to state a
claim only if "it appear[ed] beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of
facts" standard, a complaint could effectively survive a motion
to dismiss so long as it contained a bare recitation of the
claim's legal elements.

7

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   BIVENS ACTIONS

Campbell asserts that his constitutional rights have been violated, and proceeds under 42 U.S.C. § 1983.[3]  To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Here, plaintiff is a federal prisoner and his claims are asserted against federal actors.  Consequently, his claims alleging constitutional violations are more appropriately brought under

---

[3]  Plaintiff also proceeds under 42 U.S.C. §§ 1984, 1985 and 1986.

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.  The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn.

9

1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

IV.  <u>ANALYSIS</u>

A.  <u>Denial of Medical Care Claim</u>

Campbell generally asserts that defendants violated his Eighth Amendment right to adequate medical care by denying him medical treatment that he "was medically diagnose[d] to have." (Compl., 16).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials

10

that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).

11

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held

12

that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Campbell has not alleged any facts under either the objective prong (serious medical need) or the subjective prong (deliberate indifference) to support an Eighth Amendment violation.  Rather, he simply recites bare allegations, which "are no more than conclusions, [and thus,] are not entitled to the assumption of truth."  Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will disregard this denial of medical care claim's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Iqbal, 129 S.Ct. at 1949, and dismiss the claim without prejudice, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), for failure to state a claim at this time.

B.  <u>Excessive Force Claim</u>

Next, Campbell appears to assert a claim against defendant
Gibb for use of excessive force in violation of the Eighth
Amendment.  See Graham v. Connor, 490 U.S. 386, 392-394
(1989)(cases involving the use of force against convicted
individuals are examined under the Eighth Amendment's
proscription against cruel and unusual punishment).

"The Eighth Amendment, in only three words, imposes the
constitutional limitation upon punishments:  they cannot be
'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345
(1981).  The Eighth Amendment prohibits conditions which involve
the unnecessary and wanton infliction of pain or are grossly
disproportionate to the severity of the crime warranting
imprisonment.  Id. at 347.  The cruel and unusual punishment
standard is not static, but is measured by "the evolving
standards of decency that mark the progress of a maturing
society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101
(1956)).  To state a claim under the Eighth Amendment, an inmate
must satisfy an objective element and a subjective element.
Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a
basic human need is sufficiently serious; the subjective
component asks whether the officials acted with a sufficiently
culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298
(1991).  The objective component is contextual and responsive to

14

"'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action").  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Id. at 9-10.

Here, the allegations of the Complaint, if true, may suggest a claim that defendant Gibb acted in a malicious and excessive manner.  Campbell alleges that he did not provoke the rough response from Gibb; indeed, he was injured and Gibb was responding to an "inmate down" call.  However, Campbell alleges little in the way of injuries allegedly sustained from Gibb's use of force.  In fact, he fails to allege what injuries he sustained.  The Complaint does not articulate plaintiff's

injuries -- he refers to throbbing back pain from the initial injury that caused Gibb to respond to the "inmate down" call, but alleges only that Gibb's acts "hurted plaintiff worse than the pain in his back that was throbbing." (Compl., ¶ 12).  He also alleges that he "lost consciousness for a few minutes," (Compl., ¶ 14), but provides no factual support to show an actual injury from the alleged force used by Gibb.  There are no allegations of bruising, cuts, or swelling, that would suggest that Gibb used more than de minimis force.[4]  Therefore, this claim of excessive force in violation of the Eighth Amendment will be dismissed without prejudice, as against defendant Gibb, for failure to state a claim at this time.  To the extent that Campbell can allege additional facts to cure the deficiencies noted herein, he may seek leave to re-open this case and file an amended pleading.[5]

---

[4]  "[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm.  Id. at 649; Brooks, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were de minimis.  Id.

[5]  Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Campbell should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of

C.   Claims Alleging Retaliation and Conspiracy

Campbell also asserts a general claim that the defendants conspired with each other to cover-up the incident and to retaliate against plaintiff.  (Compl., ¶ 15).  The claim, however, is completely devoid of any factual support.  "[N]aked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot sustain an action.  Iqbal, 129 S.Ct. at 1949.  Therefore, this Court must dismiss these bald claims, without prejudice, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), for failure to state a claim at this time.

D.   Supervisor Liability Claim

Campbell also asserts a claim against defendants Nicoletta, Lopez, Baker and Zickefoose, alleging that they failed to adequately train, supervise or discipline Gibb.  This essentially is a claim of supervisor liability.  Because the Court has found no actionable claim of a constitutional violation by the subordinate employee, Gibb, at this time, any claim based on supervisor liability must likewise be dismissed for failure to state a claim.

Moreover, even if Gibb had violated plaintiff's constitutional rights, as alleged, as a general rule, government

---

the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").  In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to Bivens[6] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948.  Thus, each government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct.  Id., 129 S.Ct. at 1949.

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional

---

[6]  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

harm," and another under which they can be liable if they
"participated in violating plaintiff's rights, directed others to
violate them, or, as the person[s] in charge, had knowledge of
and acquiesced in [their] subordinates' violations." Santiago v.
Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal
quotation marks omitted).  "Particularly after Iqbal, the
connection between the supervisor's directions and the
constitutional deprivation must be sufficient to demonstrate a
plausible nexus or affirmative link between the directions and
the specific deprivation of constitutional rights at issue." Id.
at 130.

The Third Circuit has recognized the potential effect that
Iqbal might have in altering the standard for supervisory
liability in a § 1983 suit but, to date, has declined to decide
whether Iqbal requires narrowing of the scope of the test.  See
Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and
Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in
light of Iqbal, it is uncertain whether proof of personal
knowledge, with nothing more, provides sufficient basis to impose
liability upon supervisory official).  Hence, it appears that,
under a supervisory theory of liability, and even in light of
Iqbal, personal involvement by a defendant remains the touchstone
for establishing liability for the violation of a plaintiff's
constitutional right.  Williams v. Lackawanna County Prison, 2010
WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, plaintiff provides no facts describing how the supervisory defendants allegedly violated his constitutional rights, i.e., he fails to allege facts to show that these defendants expressly directed the deprivation of his constitutional rights, or that they created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation.  In short, Campbell has alleged no facts to support personal involvement by the supervisory defendants, and simply relies on recitations of legal conclusions such that they failed to supervise or failed to protect plaintiff in violation of his constitutional rights.  These bare allegations, "because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950.  Accordingly, this Court will

21

dismiss the claim asserting supervisor liability, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), because plaintiff has failed to state a claim at this time.

E.   Plaintiff's Claims Under §§ 1981, 1985(3) and 1986

42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions, providing:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981.  In order to prove a claim under § 1981, a plaintiff must show (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts.  Brown v. Phillip Morris Inc., 250 F. 3d 789, 797 (3d Cir. 2001).  The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

The Complaint is completely devoid of facts to show all of the required elements of § 1981 claim.  Principally, Campbell has

not alleged any facts to show that the defendants intended to discriminate against plaintiff to make and enforce contracts. Indeed, the allegations are based on claims of excessive force and denial of medical care.  Therefore, this § 1981 claim will be dismissed with prejudice.

Next, plaintiff asserts a claim under 42 U.S.C. §§ 1985(3) and 1986, alleging a conspiracy by the defendants.  The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006)(internal quotations and citations omitted).  State law civil conspiracy has similar requirements. LoBiondo v. Schwartz, 970 A.2d 1007, 1029-30 (N.J. 2009)(noting that the elements include an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage).

As discussed above, in Section IV.C., the Complaint fails to allege facts sufficient to support a conspiracy claim of any kind.  Consequently, plaintiff's § 1985(3) and § 1986 claims likewise will be dismissed for failure to state a claim.

V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted at this time.  An appropriate order follows.


 s/ Jerome B. Simandle
JEROME B. SIMANDLE
United States District Judge
Dated:  **July 7, 2011**