**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
                                    :
BERNARD CAMPBELL,                   :
                                    :
              Plaintiff,            :        Civil No. 10-6584 (JBS)
                                    :
         v.                         :
                                    :            OPINION
GIBB, et al.,                       :
                                    :
              Defendants.           :
                                    :
```

**APPEARANCES:**

      BERNARD CAMPBELL, Plaintiff pro se
      Reg. No. # 55199-066
      FCI Fort Dix - 5703
      P.O. Box 2000
      Fort Dix, New Jersey 08640

**SIMANDLE**, Chief District Judge:

      Plaintiff, Bernard Campbell, a federal inmate confined at
the FCI Fort Dix in Fort Dix, New Jersey, at the time he
submitted the above-captioned Complaint for filing, seeks to
amend his Complaint that was dismissed by Opinion and Order
issued on July 7, 2011. (Docket entry nos. 4 and 5). Plaintiff
accordingly submits an amended Complaint. (Docket entry no. 7).
The case was re-opened by Order entered on November 14, 2011.
(Docket entry no. 14). At this time, this Court must review the
amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)[1] and

---

      [1] This Court granted Plaintiff in forma pauperis status in
this action on July 7, 2011.

1915A, to determine whether the amended Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the amended Complaint should be permitted to proceed in part as to an excessive force claim against Defendant Gibb and supervisor, liability claims against three defendants who allegedly failed to protect Plaintiff from Gibb, and it will otherwise be dismissed with prejudice.

## I.  BACKGROUND

Plaintiff, Bernard Campbell ("Campbell"), brings this civil action, pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986, alleging violations of his First, Seventh, Eighth and Fourteenth Amendment rights by the following defendants: James Gibb, a physician assistant employed at FCI Fort Dix; Dr. Nicoletta Turner-Foster, a doctor employed at the FCI Fort Dix Medical Department; Dr. Abigail Lopez, the Clinical Director of the Medical Department at FCI Fort Dix; M. Baker, Health Service Administrator at FCI Fort Dix; Warden Donna Zickefoose and John Does 1-10.  (Amended Complaint, Caption and ¶¶ 10 through 17). The following factual allegations are taken from the amended Complaint, and are accepted as true for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

2

In his initial Complaint, Campbell alleged that, on October 2, 2010, defendant Gibb responded to a medical emergency involving plaintiff.  Upon Gibb's arrival at the scene, he found plaintiff lying on the ground and yelled at Plaintiff to get up off the ground.  Plaintiff alleges that Gibb falsely stated that Campbell had asked for a wheelchair, and that Gibb allegedly "violently jerked plaintiff up off the ground and threw him onto the medical cart.  (Compl., ¶ 11, Docket entry no. 1).  Campbell further alleges that Gibb pulled plaintiff from the medical cart "without professional care or justification, forcefully threw plaintiff onto an office chair with rollers on it, that hurted [sic] plaintiff worse than the pain in his back that was throbbing."  (Compl., ¶ 12).  Campbell claims that Gibb's actions were "racially motivated, with excessive force, and without professionalism."  (Id.).  Campbell also alleges that he lost consciousness for a few minutes and that the racial abuse continued for several hours.  (Compl., ¶ 14).

In his initial Complaint, Campbell further claimed that all of the defendants acted in concert and conspired with each other to retaliate against plaintiff and falsify reports to cover-up the "racial and excessive abusive acts of defendant Gibb." (Compl., ¶ 15).  Campbell alleged generally that he was denied medical treatment for his injuries.  (Compl., ¶ 16).  Campbell further asserted that defendants failed to adequately train, supervise and discipline the defendants.  (Compl., ¶ 17).  He

3

sought compensatory, punitive and consequential damages against
all of the defendants in excess of $300,000.00.
(Compl., ¶ 21).

On July 7, 2011, this Court issued an Opinion and Order
dismissing the Complaint without prejudice for failure to state a
claim at that time.  Namely, this Court found that Campbell had
failed to allege facts sufficient to show serious medical need or
deliberate indifference, both elements necessary to support a
denial of medical care claim.  (July 7, 2011 Opinion at pp. 10-
13).  Likewise, the Court dismissed without prejudice plaintiff's
claims asserting excessive force, retaliation and conspiracy and
supervisor liability because they were based solely on bare legal
assertions devoid of factual grounds.  (Id., pp. 14-23).

Campbell submitted an amended Complaint on July 27, 2011.
He alleges that the FCI Fort Dix East Compound medical department
is understaffed and has untrained personnel.  He alleges there is
only one person assigned to the medical department on any given
day, despite the East Compound's population of 2,100 inmates.
Plaintiff generally asserts that defendants, Zickefoose, Baker,
Turner-Foster, Lopez and Gibb do not properly train or supervise
the medical personnel on the care and control of sick or injured
inmates.  (Amended Compl., ¶¶ 27, 28).  He also generally alleges
that the defendants "all conspired, grouped together, planned,
agreed, co-signed each other's lies, falsified U.S. Government

documents, destroyed files, doctored files, wrote false reports and created a Chain Conspiracy." (Id., ¶ 32).

Campbell further alleges that defendants Zickefoose, Lopez and Turner-Foster "knew that at least three (3) incidents or assaults over the past few years involved Defendant Gibb." (Id. at ¶ 40). Plaintiff alleges that Zickefoose "personally reviewed" grievances and appeals, between 2008 and the present time, concerning inadequate safety, medical care and treatment, but used a form letter to deny all grievances. (Id., ¶ 42).

As to defendant Gibb's wrongful conduct, Campbell alleges that Gibb had arrived on the scene of plaintiff's accident, saying that there was nothing wrong with plaintiff and telling him to get up off the ground. When Campbell responded that he could not move, Gibb grabbed plaintiff and threw him on a medical wagon without checking to see if there were any broken bones, strained limbs, injured neck, legs or back. Campbell notes that Gibb weighs 260 pounds to plaintiff's 130 pounds to reinforce his allegation that Gibb's force was needlessly excessive. Thereafter, Gibb drove the medical wagon to the health service door and told plaintiff to get up and go inside. Campbell alleges that he was doubled over in pain and could not move so Gibb again forcefully grabbed plaintiff, carried him inside and threw him on a chair with rollers. Gibb allegedly told Campbell to get on the examining table, and plaintiff responded that he could not move. Again, Gibb grabbed plaintiff and put him on the

table.  Gibb gave Campbell a "shot of drugs for the pain" and "manhandle[ed]" Campbell back into a chair, where plaintiff sat for over an hour for the pain medication to take effect. Campbell states that he was able to walk to the medical cart at that point and Gibb then returned plaintiff to his housing unit. (Id., ¶¶ 50-52).

Campbell alleges that defendants Lopez and Turner-Foster are not licensed to practice medicine in the State of New Jersey, but acknowledges that these doctors work at the FCI Fort Dix, which is a federal military property.  (Id., ¶ 59).

Campbell next alleges that, by December 2010, defendants, Zickefoose, Lopez and Turner-Foster conspired to vacate his first floor pass, moving plaintiff from the first floor to the third floor, despite plaintiff's broken foot and the medical strain it placed on Campbell.  (Id., ¶¶ 63-64).  Campbell does not state whether his foot was broken on October 2, 2010, the date of the alleged incident with Gibb, or at a later time.  Nor does he indicate whether the first floor pass was given him initially because he had a broken foot.

Campbell next alleges that Gibb's conduct was excessive, sadistic and retaliatory because he allegedly told plaintiff while he was forcefully moving him that "[t]his will teach you to

file a grievance against us and question our medical care."[2] (<u>Id</u>., ¶ 73).

Plaintiff alleges that defendants knew that he suffers from a herniated disc in his back that purportedly causes his back to go out without notice, yet defendants allowed plaintiff to ambulate with crutches for several weeks, which caused his degenerative disc to become irritated.  Campbell further alleges that he was not given an x-ray for possible broken bones.  (<u>Id</u>., ¶¶ 83, 88).  He alleges that he continues to suffer lumbar spinal problems from degenerative disc disease causing worsening pain in his lower back.  (<u>Id</u>., ¶ 93).  He does not allege that he sustained a broken foot from the October 2, 2010 incident that was not properly treated.

## II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim

---

[2]   The Court notes an incongruity with this allegation, namely, plaintiff does not allege a prior incident with Gibb or others regarding inadequate medical care, yet Gibb was purportedly retaliating against plaintiff on October 2, 2010 for filing a grievance that was filed after that October 2, 2010 incident.

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See also</u> <u>Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[3]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two

---

[3] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in

Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[4] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]   In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

---

[4]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

<u>Fowler</u>, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this <u>pro se</u> pleading must be construed liberally in favor of Plaintiff, even after <u>Iqbal</u>. See <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  <u>BIVENS ACTIONS</u>

Campbell asserts that his constitutional rights have been violated, and proceeds under 42 U.S.C. § 1983.[5] To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Here, plaintiff is a federal prisoner and his claims are asserted against federal actors. Consequently, his claims alleging constitutional violations are more appropriately brought under

---

[5]  Plaintiff also proceeds under 42 U.S.C. §§ 1984, 1985 and 1986.

Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971).

In Bivens, the Supreme Court held that one is entitled to
recover monetary damages for injuries suffered as a result of
federal officials' violations of the Fourth Amendment.  In doing
so, the Supreme Court created a new tort as it applied to federal
officers, and a federal counterpart to the remedy created by 42
U.S.C. § 1983.  The Supreme Court has also implied Bivens damages
remedies directly under the Eighth Amendment, see Carlson v.
Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v.
Passman, 442 U.S. 228 (1979).

Bivens actions are simply the federal counterpart to
§ 1983 actions brought against state officials who violate
federal constitutional or statutory rights.  Egervary v. Young,
366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049
(2005).  Both are designed to provide redress for constitutional
violations.  Thus, while the two bodies of law are not "precisely
parallel", there is a "general trend" to incorporate § 1983 law
into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir.
1987)).

In order to state a claim under Bivens, a claimant must show
(1) a deprivation of a right secured by the Constitution and laws
of the United States; and (2) that the deprivation of the right
was caused by an official acting under color of federal law.  See
Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn.

1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

IV.  <u>ANALYSIS</u>

A.  <u>Denial of Medical Care Claim</u>

Campbell generally asserts that defendants violated his Eighth Amendment right to adequate medical care by denying him medical treatment.  It would appear that he suggests that he should have received x-rays, which were not provided, and that his degenerative disc disease was ignored in response to the October 2, 2010 incident.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to

14

adequate medical care, an inmate must allege:  (1) a serious
medical need; and (2) behavior on the part of prison officials
that constitutes deliberate indifference to that need.  Estelle,
429 U.S. at 106; Natale v. Camden County Correctional Facility,
318 F.3d 575, 582 (3d Cir. 2003).

   To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

   The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding

15

deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. <u>Andrews v. Camden County</u>, 95 F. Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F. Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3)

prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Campbell appears to contend that his prior diagnosis of a degenerative disc disease satisfies the objective prong, showing serious medical need.  He does not allege that he had sustained a broken foot.  Nevertheless, even on these limited allegations, this Court finds that a factual issue as to serious medical need exists to preclude summary dismissal on this ground.

However, Campbell's amended allegations do not satisfy the objective element showing deliberate indifference necessary to support an Eighth Amendment denial of medical care claim.  He admits that he received treatment - he was taken to the medical department and was given pain medication and crutches.  Plaintiff does allege that he did not receive any x-rays, but this does not show deliberate indifference.  Rather, even if Plaintiff had

17

sustained a broken foot which was not diagnosed at the time of
injury, at best, he states a claim of medical malpractice or
medical negligence, which is not actionable under a § 1983 or
<u>Bivens</u> action.  <u>See</u> <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d
at 110 (even if a doctor's judgment concerning the proper course
of a prisoner's treatment ultimately is shown to be mistaken, at
most what would be proved is medical malpractice and not an
Eighth Amendment violation).  Therefore, this Court will dismiss
this denial of medical care claim, with prejudice, for failure to
state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) and §
1915A(b)(1).

B.   <u>Excessive Force Claim</u>

     Next, Campbell appears to assert a claim against defendant
Gibb for use of excessive force in violation of the Eighth
Amendment.  This Court need not recite the standard governing
excessive force claims that was set forth in the July 7, 2011
Opinion in this action.  Based on Campbell's allegations
concerning Gibb's conduct on October 2, 2010, and the injuries he
sustained, the Court will allow this Eighth Amendment excessive
force claim to proceed at this time as against defendant Gibb.

C.   <u>Claims Alleging Retaliation and Conspiracy</u>

     Campbell also asserts a general claim that the defendants
conspired with each other to cover-up the incident and to
retaliate against plaintiff.  This claim was dismissed previously
because the initial Complaint was based solely on bare legal

assertions without factual support.  Campbell's amended Complaint
does not fare much better.  His only allegations of retaliation
and conspiracy are the removal of his first floor pass in
December 2010, several months after his injury on October 2,
2010, and the questionable allegation that Gibb told plaintiff
"[t]his will teach you to file a grievance against us and
question our medical care," while the incident at issue was
actually occurring and before plaintiff filed a grievance.
Otherwise, the amended Complaint is comprised mostly of lengthy
legal argument and recitals of the elements of such claims rather
than factual allegations.

    Section 1985(3) permits actions against conspiracies that
are formed "for the purpose of depriving, either directly or
indirectly, any person or class of persons of the equal
protection of the laws, or of equal privileges and immunities
under the laws[.]"  42 U.S.C. § 1985(3).  To survive summary
dismissal, conspiracy allegations "must provide some factual
basis to support the existence of the elements of a conspiracy:
agreement and concerted action."  Capogrosso v. Sup.Ct. of N.J.,
588 F.3d 180, 184 (3d Cir. 2009), cert. denied, 131 S.Ct. 220
(2010).  Moreover, a plaintiff bringing a § 1985(3) claim must
allege both "that the conspiracy was motivated by discriminatory
animus against an identifiable class and that the discrimination
against the identifiable class was invidious."  Farber v. City of
Paterson, 440 F.3d 131, 134 (3d Cir. 2006)(citing Aulson v.

Blanchard, 83 F.3d 1, 4–5 (1st Cir. 1996).  To do so, a plaintiff may rely on a "class of one" theory by alleging that that a defendant intentionally and with no rational basis treated him differently from others similarly situated.  Pantusco v. Sorrell, No. 09–3518, 2011 WL 2148392, at *7 (D.N.J. May 31, 2011)(quoting Hill v. Borough of Kurtztown, 455 F.3d 225, 239 (3d Cir. 2006)); accord Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

    Here, beyond using the word "conspiracy," Campbell fails to allege any facts suggesting that an agreement existed between the defendants to deprive him of his constitutional rights.  The amended Complaint merely alleges that defendants routinely file form letters in response to inmate grievances concerning prison staff, fail to supervise medical personnel and provide adequate medical treatment in general, and in particular to plaintiff, and revoked his first floor medical pass.  These general allegations do not rise to the level of an agreement.  See Prince v. Aiellos, No. 09–5429, 2010 WL 4025846, at *7 (D.N.J. Oct.12, 2010)("It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." (citing Spencer v. Steinman, 968 F. Supp. 1101, 1020 (E.D.Pa. 1997))).  Additionally, Plaintiff fails to allege animus against an identifiable class or against himself as a "class of one," or that the animus was invidious.  He relates only one incident occurring on October 2, 2010, and admits that his filed grievance

was in fact reviewed, although not to his liking.  Thus, the §
1985(3) conspiracy claim must be dismissed with prejudice for
failure to state a claim.

Moreover, Campbell has failed to allege the approximate time
when the agreement was made or the period of the conspiracy.  See
generally Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166
(3d Cir. 1989)("To plead conspiracy adequately, a plaintiff must
set forth allegations that address the period of the conspiracy,
the object of the conspiracy, and the certain actions of the
alleged conspirators taken to achieve that purpose."), abrogated
on other grounds by Beck v. Prupis, 529 U.S. 494 (2000).

Likewise, Campbell's § 1983 conspiracy claim should be
dismissed with prejudice.  To properly state a § 1983 conspiracy
claim, a plaintiff must allege that "persons acting under color
of state law conspired to deprive him of a federally protected
right." Perano v. Twp. of Tilden, No. 10-2393, 2011 WL 1388381,
at *4 (3d Cir. Apr. 13, 2011).  As with § 1985(3) claims, a §
1983 conspiracy claim requires a "'meeting of the minds.'"
Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183,
205 (3d Cir. 2008)(quoting Adickes v. S.H. Kress & Co., 398 U.S.
144, 158 (1970)).  For the same reasons as stated above with
respect to Plaintiff's § 1985(3) claim, any conspiracy claim
under § 1983 must be dismissed because Campbell has failed to
adequately allege the elements of a conspiracy.

Campbell also fails to allege facts sufficient to support a claim of retaliation.  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

In this case, Campbell merely alleges that his first floor medical pass was revoked December 2010, two months after his injury on October 2, 2010.  There is nothing to suggest that this action was intended as retaliation for Campbell filing a grievance against Gibb, but rather may simply reflect that Campbell's medical condition no longer required a first floor medical pass.  Moreover, Campbell's allegation that Gibb told him "[t]his will teach you to file a grievance against us and

22

question our medical care" appears illogical and disingenuous, because Campbell alleges that the remark was made on October 2, 2010, at the time of the incident itself, before any grievance was filed and before plaintiff had raised any claim of egregious conduct by Gibb or questioned the medical care he received as a result of the October 2, 2010 incident.  A spurious allegation may be disregarded in determining whether a complaint states a claim on which relief may be granted.  Thus, Campbell's allegations do not support a retaliation claim.

Therefore, because this Court finds that the minimal and bare allegations of the amended Complaint are insufficient to support a claim of retaliation and/or conspiracy, and because plaintiff has had the opportunity to amend his Complaint to cure the noted deficiencies and by this amendment has failed to do so, the Court will dismiss these claims with prejudice, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), for failure to state a claim.

D.  Supervisor Liability Claim

Campbell also appears to assert a claim against the defendants, alleging that they failed to adequately train, supervise or discipline Gibb.  This essentially is a claim of supervisor liability.  In his amended Complaint, Campbell seems to allege a claim of supervisor liability by pleading that defendants had knowledge of Gibb's violations and acquiesced in the same.  In particular, Campbell alleges that defendants

23

Zickefoose, Lopez and Turner-Foster "knew that at three (3) incidents or assaults over the past few years involved Defendant Gibb." (Amended Compl., ¶ 40).

The Third Circuit permits § 1983 claims to proceed based on a theory of supervisory liability where a plaintiff can show defendants had knowledge of their subordinates' violations and acquiesced in the same.[6]  See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)(permitting plaintiff to hold a supervisor

---

[6]  In light of the Supreme Court's decision in Iqbal, supra, the Court questions the continuing validity of the Third Circuit's supervisory liability jurisprudence.  As stated by the Supreme Court:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.  We reject this argument.  Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.  In a [Section] 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Iqbal, 129 S.Ct. at 1949 (emphasis added).  However, although the Third Circuit has acknowledged Iqbal's potential impact on § 1983 supervisory liability claims, it has declined to hold that a plaintiff may no longer establish liability under § 1983 based on a supervisor's knowledge of and acquiescence in a violation. Santiago v. Warminster Twp., 629 F.3d 121, 130 n. 8 (3d Cir. 2010); Bayer v. Monroe, 577 F.3d 186, 190 n. 5 (3d Cir. 2009). Accordingly, this Court will continue to apply the Third Circuit's traditional supervisory liability analysis as set forth above.  See Brickell v. Clinton Cnty. Prison Bd., 658 F. Supp.2d 621, 625-26 (M.D.Pa. 2009)(questioning the continuing viability of Baker v. Monroe Twp., but applying its holding to the facts of the case).

liable for a subordinate's § 1983 violation provided plaintiff is able to show "the person in charge ... had knowledge of and acquiesced in his subordinates' violations").  To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988). Allegations of actual knowledge and acquiescence must be made with particularity.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  In this case, the amended Complaint does not allege or suggest that any of the supervisory defendants had contemporaneous knowledge of the incident.  Accordingly, Campbell is only able to state a claim to the extent that he is able to show knowledge of a prior pattern of similar incidents coupled with circumstances indicating a message of approval.

Regarding the supervisory defendants here, namely, defendant Zickefoose, Campbell appears to allege that they became aware of the October 2, 2010 incident involving Gibb and plaintiff via his grievance filings.  However, participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances.  See Rode, 845 F.2d at 1208 (finding the filing of a grievance insufficient to show the actual knowledge necessary for

25

personal involvement); Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006)(per curiam)(allegations of inappropriate response to grievances does not establish personal involvement required to establish supervisory liability).

Accordingly, the Supervisory Defendants cannot be held liable for Plaintiff's July 25, 2010 kitchen injury.

However, Campbell also alleges that the supervisory defendants had prior knowledge of Gibb's assaultive conduct.  He specifically alleges that three prior incidents of assault by Gibb were reported "over the past few years."  (Amended Compl., ¶ 40).  This allegation may be sufficient to plausibly give rise to a supervisor liability claim that these supervisory defendants had prior knowledge of a pattern of Gibb's assaultive behavior. Accordingly, the Court will allow this claim to proceed at this preliminary screening stage.

E.   Plaintiff's Claims Under §§ 1981, 1985(3) and 1986

42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions, providing:

> All persons within the jurisdiction of the United States
> shall have the same right in every State and Territory to
> make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is

> enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses and exactions
> of every kind, and to no other.

42 U.S.C. § 1981.  In order to prove a claim under § 1981, a plaintiff must show (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts.  Brown v. Phillip Morris Inc., 250 F. 3d 789, 797 (3d Cir. 2001).  The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

The Complaint is completely devoid of facts to show all of the required elements of § 1981 claim.  Principally, Campbell has not alleged any facts to show that the defendants intended to discriminate against plaintiff to make and enforce contracts. Indeed, the allegations are based on claims of excessive force and denial of medical care.  Therefore, this § 1981 claim will be dismissed with prejudice.

Next, plaintiff asserts a claim under 42 U.S.C. §§ 1985(3) and 1986, alleging a conspiracy by the defendants.  The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006)(internal quotations and citations omitted).  State law civil conspiracy has similar requirements. LoBiondo v. Schwartz, 970 A.2d 1007, 1029-30 (N.J. 2009)(noting that the elements include an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage).

As more fully discussed above, in Section IV.C., the Complaint fails to allege facts sufficient to support a conspiracy claim of any kind.  Consequently, plaintiff's § 1985(3) and § 1986 claims likewise will be dismissed for failure to state a claim.

## V.   CONCLUSION

For the reasons set forth above, the amended Complaint will be allowed to proceed in part.  Namely, plaintiff's claim asserting an Eighth Amendment excessive force against defendant Gibb, and his supervisor liability claim against defendants Zickefoose, Lopez and Turner-Foster based on their failure to protect plaintiff from harm by Gibb, will be allowed to proceed at this time.  All other claims, including the Eighth Amendment denial of medical care claim, the claims asserting unlawful retaliation and conspiracy, and the claims based on §§ 1981,

28

1985(3) and 1986, will be dismissed with prejudice, in their entirety, as against all named defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  An appropriate order follows.


                              **s/ Jerome B. Simandle**
                              JEROME B. SIMANDLE,
                              Chief U.S. District Judge

Dated:  **February 21, 2012**