```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
 _____
                                 :
 BERNARD CAMPBELL,               :
                                 :
                Plaintiff,       :    Civil No. 10-6584 (JBS)
                                 :
           v.                    :
                                 :
 JAMES GIBB, et al.,             :    OPINION
                                 :
                Defendants.      :
 _____:
```

**APPEARANCES:**

Bernard Campbell, *Pro Se*
#55199-066
M.D.C. Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

David Vincent Bober, Assistant U.S. Attorney
Office of the U.S. Attorney
402 East State Street, Room 430
Trenton, NJ 08608
    Attorney for Defendants Gibb, Zickefoose, Turner-Foster and
    Lopez

**SIMANDLE, Chief Judge**

This matter comes before the Court upon Defendants' motion for summary judgment (Docket Item 58). For the reasons set forth below, Defendants' motion will be denied as to Defendant Gibb, and granted as to Defendants Lopez, Zickefoose, and Turner-Foster.

**BACKGROUND**

A.  **Procedural Background**

Although Plaintiff is currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York, at the time he submitted his complaint on December 20, 2010, he was incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey (Docket Item 1). An amended complaint was filed on July 27, 2011 (Docket Item 7). This Court screened the amended complaint, issuing an Opinion and Order dismissing Plaintiff's medical care and retaliation claims with prejudice, and allowing the excessive force claim to proceed (Docket Item 21). Summonses were issued and on September 13, 2013 Defendants filed an answer (Docket Item 40).

Discovery proceeded and on May 31, 2013, Defendants filed this motion for summary judgment (Docket Item 58). On June 19, 2013, Plaintiff filed opposition to the motion (Docket Item 59) to which Defendants replied (Docket Item 62) on July 3, 2013.

B.  **Factual Background**

Plaintiff brought this lawsuit under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 401 U.S. 388 (1971), alleging that Defendants violated Plaintiff's constitutional rights.

The factual background of this case was discussed by this Court in its February 21, 2012 Opinion screening the amended complaint.

Relevant to this motion, this Court summarized Plaintiff's allegations, stating:

> Campbell further alleges that defendants Zickefoose, Lopez and Turner-Foster "knew that at least three (3) incidents or assaults over the past few years involved Defendant Gibb." ([Amended Complaint,] *Id.* at ¶ 40). Plaintiff alleges that Zickefoose "personally reviewed" grievances and appeals, between 2008 and the present time, concerning inadequate safety, medical care and treatment, but used a form letter to deny all grievances. (*Id.*, ¶ 42).
>
> As to defendant Gibb's wrongful conduct, Campbell alleges that Gibb had arrived on the scene of plaintiff's accident, saying that there was nothing wrong with plaintiff and telling him to get up off the ground. When Campbell responded that he could not move, Gibb grabbed plaintiff and threw him on a medical wagon without checking to see if there were any broken bones, strained limbs, injured neck, legs or back. Campbell notes that Gibb weighs 260 pounds to plaintiff's 130 pounds to reinforce his allegation that Gibb's force was needlessly excessive. Thereafter, Gibb drove the medical wagon to the health service door and told plaintiff to get up and go inside. Campbell alleges that he was doubled over in pain and could not move so Gibb again forcefully grabbed plaintiff, carried him inside and threw him on a chair with rollers. Gibb allegedly told Campbell to get on the examining table, and plaintiff responded that he could not move. Again, Gibb grabbed plaintiff and put him on the table. Gibb gave Campbell a "shot of drugs for the pain" and "manhandle[ed]" Campbell back into a chair, where plaintiff sat for over an hour for the pain medication to take effect. Campbell states that he was able to walk to the medical cart at that point and Gibb then returned plaintiff to his housing unit. (*Id.,* ¶¶ 50–52).
>
> Campbell alleges that defendants Lopez and Turner-Foster are not licensed to practice medicine in the State of New Jersey, but acknowledges that these doctors work at the FCI Fort Dix, which is a federal military property. (*Id.,* ¶ 59).
>
> Campbell next alleges that, by December 2010, defendants, Zickefoose, Lopez and Turner-Foster conspired to vacate his first floor pass, moving plaintiff from the

3

first floor to the third floor, despite plaintiff's broken
foot and the medical strain it placed on Campbell. (*Id.*, ¶¶
63-64). Campbell does not state whether his foot was broken
on October 2, 2010, the date of the alleged incident with
Gibb, or at a later time. Nor does he indicate whether the
first floor pass was given him initially because he had a
broken foot.

    Campbell next alleges that Gibb's conduct was
excessive, sadistic and retaliatory because he allegedly
told plaintiff while he was forcefully moving him that
"[t]his will teach you to file a grievance against us and
question our medical care." (*Id.*, ¶ 73).

*See* Docket Item 20, Opinion, pp. 3-7 (footnote omitted).

    With regard to the claim that passed *sua sponte* screening in the amended complaint, Plaintiff argues that he was a victim of excessive force in violation of the Eighth Amendment, and entitled to damages under *Bivens*, *supra*. This Court examined the excessive force claim in its opinion screening the original complaint and found:

> Here, the allegations of the Complaint, if true, may
> suggest a claim that defendant Gibb acted in a malicious and
> excessive manner. Campbell alleges that he did not provoke
> the rough response from Gibb; indeed, he was injured and Gibb
> was responding to an "inmate down" call. However, Campbell
> alleges little in the way of injuries allegedly sustained
> from Gibb's use of force. In fact, he fails to allege what
> injuries he sustained. The Complaint does not articulate
> plaintiff's injuries—he refers to throbbing back pain from
> the initial injury that caused Gibb to respond to the "inmate
> down" call, but alleges only that Gibb's acts "hurted [sic]
> plaintiff worse than the pain in his back that was
> throbbing." (Compl., ¶ 12). He also alleges that he "lost
> consciousness for a few minutes," (Compl., ¶ 14), but
> provides no factual support to show an actual injury from
> the alleged force used by Gibb. There are no allegations of
> bruising, cuts, or swelling, that would suggest that Gibb
> used more than *de minimis* force.

4

*See* Docket Item 4, Opinion at pp. 16-17 (footnote omitted).  Upon screening of the amended complaint, this Court found that:  "Based on Campbell's allegations concerning Gibb's conduct on October 2, 2010, and the injuries he sustained, the Court will allow this Eighth Amendment excessive force claim to proceed at this time as against defendant Gibb."  (Docket Item 20, Opinion at p. 18).

On April 10, 2013, Plaintiff's deposition was taken.  Attached to the motion for summary judgment is a transcript of that deposition, as well as Plaintiff's medical records and various other documents from Plaintiff's Bureau of Prisons' ("BOP") file.

## DISCUSSION

**A.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *See id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *See id.* The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  *See Hunt v.*

*Cromartie*, 526 U.S. 541, 552 (1999). *See also Scott v. Harris*, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

**B.   Defendants' Argument**

Defendants assert three arguments upon which summary judgment can be based:  (1) Under the legal standards applicable to excessive force claims, summary judgment is appropriate because this case falls squarely into the line of cases holding that *de minimis* uses of force do not implicate the Constitution; (2) Defendants are entitled to qualified immunity because Gibb's alleged use of force was similar to other cases in which force has been ruled *de minimis*; and (3) Supervisory Defendants (Zickefoose, Turner-Foster and Lopez) must be dismissed because there is no evidence that Gibb had a prior pattern of assaultive behavior.  (Docket Item 58-1, Brief).

**C.   Summary Judgment Must Be Denied as to Defendant Gibb**

   **1.   Plaintiff's testimony**

Plaintiff testified that on the date in question he was on the pill line on crutches because he had a broken ankle (Declaration of David Bober, Exh. A, Pltf. Dep. at 34:17; 35:2-10).  He fell to the concrete ground when a back problem acted up and laid there in pain while an officer called for help (*Id.* at 43:1-17).  Defendant Gibb, a Bureau of Prisons' Health Technician, responded to the call, claiming

that Plaintiff had "nothing wrong with him," which the other officer disputed, pointing out Plaintiff's back problem (*Id.* at 43:18-25, 44:1-2). Defendant Gibb "kept hollering, 'Get up off the ground,' . . . And next thing I know, he reached down, he grips me up, and as a result I'm really like in pain, and he just slammed me on the medical wagon for no apparent reason." (*Id.* at 44:3-6). Further in the deposition, Plaintiff states, "[Gibbs] gripped me up and slammed me on the medical wagon." (*Id.* at 48:20-21). Then, "[Gibb] didn't, you know, take his time, you know, to see if anything's broken or whatever. He just reached up, and he just gripped me up, and he just slammed me on the medical [wagon]." (*Id.* at 49:9-12). When asked where the officer gripped him, Plaintiff testified, "He just grabbed me by my chest because I don't know if I had a jacket on or something. He just grabbed me, and he just gripped me up and just threw me on the medical wagon." (*Id.* at 49:17-19). At that point, Plaintiff testified that he "was screaming and hollering. You know, I was in pain." (*Id.* at 49:23-24). According to Plaintiff's testimony, the people witnessing the event started "screaming and hollering" after Gibb's action; even the other officer said, "What's wrong with you?" to Gibb. (*Id.* at 50:1-8). After Gibb drove him to medical, he "forcefully laid" Plaintiff on the medical table. (*Id.* at 57:18).

When Plaintiff was asked if Gibb caused him any injury by his act of putting him on the medical wagon, Plaintiff stated: "He inflicted

7

unnecessary whopping of pain upon me for no reason . . . ." (*Id.* at 79:25, 80:1), and "as a result, my pain became intensified because of his actions . . . ." (*Id.* at 80:8-9).

   2.  **Eighth Amendment Standard**

Whether force used against a prisoner was excessive depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In assessing whether the force used was appropriate, the Court considers the need for the application of force and its relationship to the amount of force used as well as the injury inflicted. *See id.*

In *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992), the Supreme Court found that unlike conditions of confinement claims and deliberate indifference claims, which both require conduct exceeding a certain threshold of depravity, claims of excessive force need not meet any particular threshold of harm. *Id.* at 9. This is because, "in the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *This is true whether or not significant injury is evident*." *Id.* (emphasis added). The Supreme Court added that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* But this is because

8

not every malevolent touch constitutes a capricious infliction of pain. As indicated by the cases the Supreme Court cites for this proposition, the court was distinguishing excessive force from mere battery, which applies to any unwanted touching, even that which does inflict pain. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

As the Third Circuit has repeatedly explained, "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002) (citations omitted). "Requiring objective or independent proof of minor or significant injury would ignore this teaching and place protection from injury, instead of protection from wanton force, at the hub of the Eighth Amendment." *Id.; see also Brooks v. Kyler*, 204 F.3d 102, 108 (3d Cir. 2000); *Rhodes v. Robinson*, 612 F.2d 766, 771 (3d Cir. 1979). In each case, courts must examine the necessity of the force in addition to the extent of the injury to determine whether the force was used maliciously to cause harm. *Smith*, 293 F.3d at 649 *("[D]e minimis injuries do not necessarily establish de minimis force.")*.

Here, Defendant argues that Plaintiff's injury from the incident with Gibb was *de minimis* and that "the only reasonable conclusion that a trier of fact could reach is that whatever force Gibb employed, even if more than required to place Campbell in the cart as gently as

9

possible, was 'not repugnant to the conscience of mankind.'" (Defendants' Brief at p. 15 (citation omitted)).

While Defendant argues that Plaintiff's injuries are *de minimis* in nature, Plaintiff has presented sufficient evidence to place that issue before the finder of fact. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (explaining *de minimis* nature of injuries may cast doubt on prisoner's account of the incident but that is an issue of fact to be resolved by the fact finder based on all of the evidence); *see also Evans v. Cameron*, 442 F. App'x 704, 708 (3d Cir. 2011) ("*de minimis* injuries do not necessarily establish *de minimis* force," and the issue of whether a prisoner's injuries were so minor such that the defendants' account of the issue is more credible than the prisoner's account, "is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide."). Therefore, summary judgment must be denied.

### 3. <u>Qualified Immunity</u>

Defendant Gibb is protected by qualified immunity if he "made a reasonable mistake about the legal constraints" on his actions. *Curley v. Klem*, 499 F.3d 199, 206–07 (3d Cir. 2007) (internal quotations and citations omitted). A mistake is not reasonable when it amounts to the violation of a "clearly established" right, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation

he confronted." *Curley*, 499 F.3d at 207 (internal quotations and citations omitted).

In this case, the proper question for assessing qualified immunity is whether a reasonable Bureau of Prisons Health Technician such as defendant Gibb, could have believed it was lawful to pick up an injured inmate by the chest and "slam" him into a medical wagon, when the inmate used crutches because of an ankle injury, complained of intense pain, and a corrections officer explained that the inmate suffered from a back problem.[1] Because Defendant has proffered no explanation whatsoever for the force to which Plaintiff testified he was subjected, he should have known his conduct was unlawful, even assuming that Plaintiff's "intensified pain" could be considered *de minimis*. He is therefore not entitled to qualified immunity.

**D.  Summary Judgment Must Be Granted as to Defendants Turner-Foster, Zickefoose, and Lopez**

In the February 21, 2012 Opinion, this Court allowed the excessive force claim to proceed against defendants Turner-Foster, Zickefoose, and Lopez, because Plaintiff "specifically allege[d] that three prior incidents of assault by Gibb were reported over the past few years." Docket Item 20, Opinion at p. 26.

---

[1] Of course, the Court does not find that this is actually what occurred. But on this motion for summary judgment, the record evidence must be viewed in favor of the nonmoving party. *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

However, Plaintiff's deposition testimony, as well as the record provided with this summary judgment motion and reply, reveals nothing to support this allegation by Plaintiff. It appears that these defendants did not have any knowledge of similar allegations involving Gibb. In fact, defendants Zickefoose and Turner-Foster submitted declarations that they had no knowledge of any prior allegations against Gibb. *See* Docket Items 62-2, 62-3. Plaintiff testified that he'd "heard [Gibb had] been involved in quite a few other incidents" (Pltf. Dep. at 73:16-17), but provided no other support for the allegations.

Thus, Plaintiff has not established "knowledge of a pattern of similar incidents and circumstances under which a supervisor's inaction could be found to have communicated a message of approval." *See Holmes v. Cushner*, No. 10-5384, 2012 WL 6624108 at *6 (D.N.J. Dec. 19, 2012)(denying summary judgment to officer who "slammed" plaintiff on excessive force claim and denying qualified immunity to defendant officer, but granting as to city ) (quoting and citing *Hansell v. City of Atlantic City*, 152 F. Supp.2d 589, 609 (D.N.J. 2001), *aff'd* 46 F. App'x 665 (3d Cir. 2002) and *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 2002)). As such, summary judgment must be granted as to these supervisory defendants. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is partially denied, partially granted.  An appropriate Order follows.


**December 20, 2013**                           **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE, Chief Judge
                                                 United States District Court